UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

FRIENDS OF MERRYMEETING BAY, )
et al., )
 )
      Plaintiffs )
 )
v. ) No. 2:11-cv-38-GZS
 )
NEXTERA ENERGY RESOURCES )
LLC, et al., )
 )
      Defendants )


AMENDED[1] RECOMMENDED DECISION ON MOTIONS TO DISMISS

The defendants, NextEra Energy Resources LLC, NextEra Energy Maine Operating Services LLC, The Merimil Limited Partnership, and FPL Energy Maine Hydro, LLC, move to dismiss or stay this action arising under the Endangered Species Act ("ESA"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' Motion to Dismiss ("NextEra Motion") (Docket No. 13) at 1; FPL Energy Maine Hydro, LLC's Motion to Dismiss or in the Alternative to Stay This Action ("FPL Motion") (Docket No. 29). I recommend that the court grant the motion NextEra Motion in part and deny the FPL Motion.[2]

---

[1] The recommended decision as to Count II is amended to reflect that only two of the named defendants sought dismissal of this count.

[2] Defendant FPL Energy Maine Hydro, LLC has requested, without explanation, oral argument on its motion. FPL Motion at 17. The other three defendants make no such request. Given this fact, and the similarity of the issues raised here by FPL with those raised in the defendants' motions to dismiss in two related cases, *Friends of Merrymeeting Bay, et al. v. Miller Hydro Group*, No. 2:11-cv-36-GZS, and *Friends of Merrymeeting Bay, et al. v. Topsham Hydro Partners Limited Partnership*, No. 2:11-cv-37-GZS, on which no oral argument was requested and I have recently filed recommended decisions, I conclude that the briefs in this case adequately present the issues for the court's consideration and deny FPL's request for oral argument.

## I. Applicable Legal Standard

When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating that the court has jurisdiction. *Aversa v. United States,* 99 F.3d 1200, 1209 (1st Cir. 1996). The moving party may use affidavits and other matter to support the motion, while the plaintiff may establish the existence of subject-matter jurisdiction through extra-pleading material. 5B C. Wright & A. Miller, *Federal Practice and Procedure*, § 1350 at 159-60 (3d ed. 2004); *see also Aversa*, 99 F.3d at 1210; *Hawes v. Club Ecuestre el Comandante*, 598 F.2d 698, 699 (1st Cir. 1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements, and an affidavit).

With respect to Rule 12(b)(6), as the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id*. "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## II. Factual Background

The complaint includes the following relevant factual allegations.

Plaintiff Friends of Merrymeeting Bay ("FOMB") is a non-profit Maine corporation dedicated to preserving the ecological, aesthetic, historical, recreational, and commercial values of Maine's Merrymeeting Bay and its watershed, which includes the Androscoggin River. Amended Complaint (Docket No. 27) ¶ 6. Plaintiff Environment Maine is a non-profit Maine corporation that advocates for clean air, clean water, and preservation of Maine's natural resources. *Id*. ¶ 7. Defendant FPL Energy Maine Hydro, LLC ("FPL") holds the Federal Energy Regulatory Commission licenses to the Weston, Shawmut, and Brunswick dams. *Id.* ¶ 9a. The defendants own and/or operate the Weston, Shawmut, and Lockwood dams on the Kennebec River and the Brunswick dam on the Androscoggin River. *Id*. ¶¶ 8-11.

The plaintiffs gave the defendants notice of the violations alleged in this complaint more than 60 days prior to the commencement of this lawsuit. *Id*. ¶¶ 13 & 13a.

Historically, the Androscoggin River and the Kennebec River, which share a common estuary, Merrymeeting Bay, had the largest Atlantic salmon runs in the United States. *Id*. ¶ 17. Now, according to recent annual surveys done by the Maine Atlantic Salmon Commission, the number of adult Atlantic salmon returning to the Androscoggin River each year is dangerously low. *Id*. The Secretary of Commerce (for endangered species in the ocean) and the Secretary of the Interior (for all other species) are responsible for administering and implementing the ESA, with the National Marine Fisheries Service and the United States Fish and Wildlife Service (collectively, "Services") sharing responsibility for managing the protection of the Atlantic salmon. *Id*. ¶ 20. In 2000, the Services listed the Gulf of Maine Distinct Population Segment of Atlantic salmon as endangered because it is in danger of becoming extinct. *Id*. ¶ 21.

In 2005, FOMB and others filed a petition with the Services asking that the Kennebec, Androscoggin, and Penobscot River salmon populations be included in the description of the endangered population segment. *Id*. After the petitioners filed suit in May 2008 to obtain a ruling on the petition, the Services ruled on the petition on September 3, 2008, and formally designated the salmon population of those rivers as endangered under the ESA. *Id*. On the same day, the National Marine Fisheries Service issued a final rule designating "critical habitat" for the Kennebec, Androscoggin, and Penobscot salmon. *Id*. ¶ 22. The portions of the Androscoggin and Kennebec Rivers where the dams at issue are located are part of that critical habitat. *Id*.

When a federally licensed activity, such as operating a hydroelectric dam, causes a "take" as defined in the ESA, the licensee may receive authorization under the ESA to continue the activity. *Id*. ¶ 26. The licensee may apply for an "incidental take permit" ("ITP") or an "incidental take statement" ("ITS"). *Id*. In either case, certain specified conditions must be met. *Id*.

The dams at issue "take" Atlantic salmon in the following ways, among others: the dams' turbines kill and injure out-migrating salmon when they attempt to pass through them; the dams severely limit upstream passage of salmon, preventing access to significant amounts of spawning and rearing habitat; facilities meant to allow the salmon to pass around or through the dams cause delays in passage, resulting in incremental losses of salmon smolts, pre-spawn adults, and adults; the dams are barriers to the migration of other fish whose presence is necessary for the salmon to complete their life cycle; the dams adversely alter predator-prey assemblages; the dams create slow-moving impoundments in formerly free-flowing reaches, making these habitats

less suitable for spawning and impairing essential behavior of the salmon; and the dams result in adverse hydrological changes. *Id*. ¶ 28.

The defendants have neither an ITP nor an ITS authorizing their take of Atlantic salmon at the dams. *Id*. ¶ 29. The plaintiffs allege that they are, therefore, violating section 9(a)(1)(B) of the ESA. *Id*.

The plaintiffs also allege that the defendants are violating the Clean Water Act, 33 U.S.C. § 1251 *et seq*. *Id*. ¶¶ 31-41.

### III. Discussion

### A. Primary Jurisdiction

The defendants argue that this court should stay or dismiss Count I of the complaint under the doctrine of primary jurisdiction. NextEra Motion at 9-15; FPL Motion at 8-16.

The primary jurisdiction doctrine "counsels abstention whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd.*, 633 F.3d 20, 30 n.13 (1st Cir. 2011) (citation and internal quotation marks omitted). In this case, however, the ESA does not place the ITP and ITS process within the administrative control of a single agency; instead, it charges the Secretaries of the Treasury, of the Interior, and of the Department in which the Coast Guard was operating at the relevant time, jointly to formulate implementing regulations. 16 U.S.C. §§ 1532(15), 1540(f).

In a case in which the defendant invoked the doctrine under the Resource Conservation and Recovery Act, the First Circuit observed that circumstances justifying a federal court's abstention when a citizen's suit is brought as authorized by a federal statute "will be exceedingly rare." *Chico*, 633 F.3d at 31-32. The defendants have not even attempted to identify any rare

5

circumstances that would justify abstention here. In a case brought under the Clean Air Act where the defendant made similar arguments, the court held that "to delay citizen enforcement would frustrate Congress's intent, as evidenced by its provisions for citizen suits, to facilitate broad enforcement of environmental-protections laws and regulations." *St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Refining, L.L.C.*, 348 F.Supp.2d 765, 766, 768 (E.D.La. 2004).

In a case very similar on its facts to the instant case, a federal district court judge wrote the following about a defendant's invocation of the doctrine of primary jurisdiction:

> Although the court agrees with [the defendant's] belief that findings made by the FWS and NMFS during the [Habitat Conservation Plan] process will affect whether an ITP is ultimately issued to [the defendant], the pendency of [the defendant's] ITP application is not relevant to whether [its] timber harvesting operations have resulted or will imminently result in the "take" of coho salmon in the watersheds at issue in this action. The HCP approval process requires NMFS and FWS to determine the extent of the impact on coho salmon resulting from the issuance of an ITP, whether the steps taken by [the defendant] to minimize and mitigate such impacts are sufficient, and whether continued logging operations will reduce the likelihood of the survival and recovery of coho salmon. *See* 16 U.S.C. § 1539(a)(2). In contrast, enforcement of the ESA's prohibition against the "take" of endangered or threatened species has been placed squarely within the jurisdiction of the courts through the ESA's citizen-suit provisions. In determining whether a take of coho salmon has occurred or is likely to occur, the court will not be called upon to determine the best strategy for conserving and restoring the coho salmon population in the rivers of northern California. Rather, the court must only decide whether [the defendant's] logging operations have resulted in a take of or will cause imminent harm to coho salmon in the watersheds at issue. As noted by the *Loggerhead Turtle* court, there is no "invasion" of the expertise of the Secretary of the Interior and the court need not entangle itself in a premature review of the Secretary's decision to issue an ITP.

*Coho Salmon v. Pacific Lumber Co.*, 61 F.Supp.2d 1001, 1015-16 (N.D.Cal. 1999) (case citations and internal quotation marks omitted). Thus, "[i]n the instant action, there is no potential for conflicting decisions between the court and the decisions of NMFS and FWS, nor

would the court's determination of whether a take has occurred conflict with the Secretary's decision to issue an ITP." *Id*. at 1016. That reasoning applies here.

The request that the court stay or dismiss this action under the doctrine of primary jurisdiction should be denied.[3] To the extent that the defendants assert that Count II of the complaint should be dismissed for this reason as well, NextEra Motion at 15 n.6, FPL Motion at 16 n.5, the same reasoning applies to that claim.

### B. Dismissal of the NextEra Entities

NextEra Energy Resources LLC ("ER") and NextEra Energy Maine Operating Services LLC ("EMOS") contend that they are neither owners nor licensees of the dams at issue and that, therefore, they cannot be liable for violation of the ESA or the Clean Water Act ("CWA"). Motion at 16-20. As support for this assertion, these defendants offer the affidavit of Robert C. Richter III. *Id*. at 16.

Richter identifies himself as a biologist who oversees "upstream and downstream fish passage activities, as well as the HCP/ITP process, on behalf of the licensees of the Lockwood, Shawmut, Weston, and Brunswick dams." Affidavit of Robert C. Richter III ("Richter Aff.") (Docket No. 14) ¶ 1. Attached to the affidavit, which attests that they are true and accurate, are copies of licenses issued to Central Maine Power Company in 1997 for the Weston dam, to Merimil Limited Partnership in 2005 for the Lockwood dam, to Central Maine Power Company in 1979 for the Brunswick dam, and to Central Maine Power Company in 1981 for the Shawmut dam. Docket Nos. 14-1, 14-2, 14-3, and 14-4. Also attached to the affidavit is a copy, attested as true and accurate, of a FERC order approving transfer of Central Maine Power Company's licenses to FPL Energy Maine Hydro LLC. Docket No. 14-5.

---

[3] The defendants also contend, in identical footnotes, that this case should be dismissed as not ripe for adjudication. NextEra Motion at 15 n.7, FPL Motion at 17 n.6. Such a glancing presentation of an argument is not entitled to the court's consideration. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 19 (1st Cir. 2009).

7

ER and EMOS argue that they may not be held liable as owners or licensees of these dams merely because the actual owners or licensees are their subsidiaries. NextEra Motion at 16-19. They cite *United States v. Bestfoods*, 524 U.S. 51 (1998), and *Johnson v. Exclusive Properties Unlimited*, 1998 ME 244, 720 A.2d 568, in support of this argument.

The plaintiffs respond that ER must be deemed to own and operate the dams because its website says that it does, as they allege in the amended complaint.[4] Plaintiffs' Opposition to Defendants' Motion to Dismiss or Stay This Action ("NextEra Opposition") (Docket No. 21) at 19; Amended Complaint ¶ 8. Because the fact that another entity is the licensee for a given dam does not necessarily mean that ER may not own that dam, and because, as I understand it at this stage of this proceeding, an owner may be liable under ESA and CWA as well as a licensee, I am inclined to agree that, for purposes of the motions to dismiss, the allegations of the amended complaint are sufficient as to ER. The amended complaint alleges that EMOS is a subsidiary of NextEra. *Id.* ¶ 9. The defendants' assertion that the corporate veil cannot be pierced under the circumstances of this case would more appropriately be proffered in the context of a motion for summary judgment, where the factual underpinnings for the argument could be addressed. A motion to dismiss, after all, tests only the allegations of the operative complaint. Therefore, contrary to the defendants' argument, the plaintiffs need not "allege how NextEra ER operates or exercises control over the dams or on what basis or how often it does so." NextEra Motion at 18.

The analysis is different for the CWA claim. The moving defendants contend that only a licensee may be liable for such a claim under the circumstances of this case. NextEra Motion at

---

[4] I reject the plaintiffs' attempt to discredit Richter's affidavit because he "undoubtedly does not (and does not claim to) have personal knowledge of the corporate structure of" NextEra or of the decision-making process for dam operations. NextEra Opposition at 19 n,14. His affidavit may be offered for the assertion that "NextEra ER is not the owner of the dam[,]" NextEra Motion at 17, but it only cites to the FERC licenses in support of this assertion, and those licenses do not purport to establish ownership. With respect to the ownership argument, the affidavit merely authenticates FERC licenses, and the plaintiffs do not dispute Richter's ability to do that.

18-19. The plaintiff does not respond to this argument. NextEra Opposition at 19-20. Accordingly, I recommend that the motion to dismiss be granted as to Count II only for the defendants moving for such a dismissal, NextEra ER and NextEra EMOS. *See* Local Rule 7(b); *ITI Holdings, Inc. v. Odom*, 468 F.3d 17, 19 (1st Cir. 2006).

### IV. Conclusion

For the foregoing reasons, I recommend that the motion of defendants NextEra ER and NextEra EMOS (Docket No. 13) to dismiss be **GRANTED** as to Count II of the Amended Complaint and otherwise **DENIED**, the motion of NextERA ER, NextEra EMOS, and Merimil as to Count I of the Amended Complaint be **DENIED**, and the motion of FPL Energy Maine Hydro, LLC (Docket No. 29) to dismiss be **DENIED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 22nd day of July, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge